Department of Veterans Affa

1601 KIRKWOOD HGWY
WILMINGTON DE 19805

February 8, 1999
PAGE 2

IN REPLY REFER TO:

FILE NUMBER:
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
PAYEE NO 00
U BANER

The rate of VA pension depends on total "family" income which includes the payee's income and that of any dependents. We must adjust the payments whenever this income changes. You must notify us immediately if income is received from any source other than that shown above. You must also report any changes in the income shown above. Your failure to promptly tell VA about income changes may create an overpayment which will have to be repaid.

Please read the enclosed VA Form 21-8768. It contains important information about rights to receive this benefit.

If your mailing address is different than that shown above, please advise us of your new mailing address. You should notify us immediately of any changes in your mailing address.

IF YOU RESIDE IN THE CONTINENTAL UNITED STATES, ALASKA, HAWAII OR PUERTO RICO, YOU MAY CONTACT VA WITH QUESTIONS AND RECEIVE FREE HELP BY CALLING OUR TOLL-FREE NUMBER 1-800-827-1000 (FOR HEARING IMPAIRED TDD 1-800-829-4833).

C. T. KEENAN
ADJUDICATION OFFICER

Encl: IB 04-81-6 21-8768

IMPORTANT - SEE REVERSE FOR PROCEDURAL AND APPELLATE RIGHTS
KEEP THIS LETTER FOR FUTURE REFERENCE

000190

VA FORM OCT 1993 20-8993

**DEPARTMENT OF VETERANS AFFAIRS**
Regional Office
1601 Kirkwood Hwy
Wilmington DE 19805-4917

APR 3 1999

In Reply Refer To:
460/21

[redacted]
URMILA BANERJEE

URMILA BANERJEE
[redacted]

Dear Ms Banerjee:

You have filed a Notice of Disagreement with our action. This is the first step in appealing to the Board of Veterans' Appeals (BVA). This letter and enclosures contain very important information concerning your appeal.

**Statement of the Case**

We have enclosed a Statement of the Case, a summary of the law and evidence concerning your claim. This summary will help you to make the best argument to the BVA on why you think our decision should be changed.

**What You Need to Do**

To complete your appeal, you must file a formal appeal. We have enclosed VA Form 9, Appeal to the Board of Veterans' Appeals, which you may use to complete your appeal. We will gladly explain the form if you have questions. Your appeal should address:

- the benefit that you want
- the facts in the statement of the case with which you disagree; and
- the errors that you believe we made in applying the law.

**When You Need to Do It**

You must file your appeal with this office within 60 days from the date of this letter or within the remainder, if any, of the one-year period from the date of the letter notifying you of the action that you have appealed. **If we do not hear from you within this period, we will close your case.** If you need more time to file your appeal, you should request more time before the time limit for filing your appeal expires.

[redacted]
URMILA BANERJEE

**Hearings**

You may have a hearing before we send your case to the BVA. If you tell us that you want a hearing, we will arrange a time and a place for the hearing. VA will provide the hearing room, the hearing official, and a transcript of the hearing for the record. VA cannot pay any other expenses of the hearing. You may also have a hearing before the BVA, as noted on the enclosed VA Form 9, Appeal to Board of Veterans' Appeals. **Do not delay filing your appeal if you request a hearing. Your request for a hearing does not extend the time to file your appeal.**

**Representation**

If you do not have a representative, it is not too late to choose one. An accredited representative of a recognized service organization may represent you without charge. An attorney or an accredited agent may also represent you, and may charge you a fee for services related to your claim that he or she provides after a final decision of the BVA under certain circumstances. VA cannot pay fees of agents or attorneys. For more information on fees, see 38 U.S.C. § 5904. If an attorney or accredited agent charges a fee for services in connection with your claim before VA, the attorney or agent should file a copy of the fee agreement within 30 days after it is signed. The fee agreement should be filed at the following address: Counsel to the Chairman (01C3), Board of Veterans' Appeals, 810 Vermont Avenue, N.W., Washington, DC 20420.

**What We Will Do**

After we receive your appeal, we will send your case to the BVA in Washington, DC, for a decision. The BVA will base its decision on an independent review of the entire record, including the transcript of the hearing, if you have a hearing.

Sincerely yours,

C. T. KEENAN
Customer Services Officer

Enclosure(s): VA Form 9

| Statement of the Case | *Department of Veterans Affairs*<br>*Wilmington Medical and Regional Office Center* | | Page 1<br>03/17/99 |
|---|---|---|---|
| NAME OF VETERAN<br>URMILA BANERJEE | VA FILE NUMBER<br>[redacted] | SOCIAL SECURITY NR | POA |

**ISSUE:**

1. Evaluation of residuals, stress fracture, left third metatarsal currently evaluated as 0 percent disabling.
2. Service connection for chronic paranoid schizophrenia.

**EVIDENCE:**

Service medical records for the period 10/90 to 6/91.
VA examination dated 7-9-98.
Outpatient treatment reports from Wilmington VA Medical Center.

**ADJUDICATIVE ACTIONS:**

| | |
|---|---|
| Military Service: | October 9, 1990 to June 21, 1991 Honorable |
| June 16, 1998: | Claim received. |
| July 9, 1998: | VA examination conducted at Wilmington VA Medical Center. |
| January 5, 1999: | Claim considered based on all the evidence of record. |
| February 6, 1999: | Claimant notified of decision. |
| March 4, 1999: | Notice of Disagreement received. |

**PERTINENT LAWS; REGULATIONS; RATING SCHEDULE PROVISIONS:**

Unless otherwise indicated, the symbol "§" denotes a section from title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief. Title 38 contains the regulations of the Department of Veterans Affairs which govern entitlement to all veteran benefits.

38 USC Section 5107. Burden of proof; benefit of the doubt

(a) Except when otherwise provided by the Secretary in accordance with the provisions of this title, a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist such a claimant in developing the facts pertinent to the claim. Such assistance shall include requesting information as described in section 5106 of this title.

§3.303 Principles relating to service connection.

| Statement of the Case | *Department of Veterans Affairs* *Wilmington Medical and Regional Office Center* | | Page 2 03/17/99 |
|---|---|---|---|
| NAME OF VETERAN URMILA BANERJEE | VA FILE NUMBER [redacted] | SOCIAL SECURITY NR [redacted] | POA |

(a) General. Service connection connotes many factors but basically it means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. This may be accomplished by affirmatively showing inception or aggravation during service or through the application of statutory presumptions. Each disabling condition shown by a veteran's service records, or for which he seeks a service connection must be considered on the basis of the places, types and circumstances of his service as shown by service records, the official history of each organization in which he served, his medical records and all pertinent medical and lay evidence. Determinations as to service connection will be based on review of the entire evidence of record, with due consideration to the policy of the Department of Veterans Affairs to administer the law under a broad and liberal interpretation consistent with the facts in each individual case.

(b) Chronicity and continuity. With chronic disease shown as such in service (or within the presumptive period under §3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. This rule does not mean that any manifestation of joint pain, any abnormality of heart action or heart sounds, any urinary findings of casts, or any cough, in service will permit service connection of arthritis, disease of the heart, nephritis, or pulmonary disease, first shown as a clearcut clinical entity, at some later date. For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim.

(c) Preservice disabilities noted in service. There are medical principles so universally recognized as to constitute fact (clear and unmistakable proof ), and when in accordance with these principles existence of a disability prior to service is established, no additional or confirmatory evidence is necessary. Consequently with notation or discovery during service of such residual conditions (scars; fibrosis of the lungs; atrophies following disease of the central or peripheral nervous system; healed fractures; absent, displaced or resected parts of organs; supernumerary parts; congenital malformations or hemorrhoidal tags or tabs, etc.) with no evidence of the pertinent antecedent active disease or injury during service the conclusion must be that they preexisted service. Similarly, manifestation of lesions or symptoms of chronic disease from date of enlistment, or so close thereto that the disease could not have originated in so short a period will establish preservice existence thereof. Conditions of an infectious nature are to be considered with regard to the circumstances of the infection and if manifested in less than the respective incubation periods after reporting for duty, they will be held to have preexisted service. In the field of mental disorders, personality disorders which are characterized by developmental defects or pathological trends in the personality structure manifested by a lifelong pattern of action or behavior, chronic psychoneurosis of long duration or other psychiatric

symptomatology shown to have existed prior to service with the same manifestations during service, which were the basis of the service diagnosis will be accepted as showing preservice origin. Congenital or developmental defects, refractive error of the eye, personality disorders and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation.

(d) Postservice initial diagnosis of disease. Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and Department of Veterans Affairs regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid.

§3.321 General rating considerations.

(a) Use of rating schedule. The 1945 Schedule for Rating Disabilities will be used for evaluating the degree of disabilities in claims for disability compensation, disability and death pension, and in eligibility determinations. The provisions contained in the rating schedule will represent as far as can practicably be determined, the average impairment in earning capacity in civil occupations resulting from disability. (Authority: 38 U.S.C. 1155)

(b) Exceptional cases:

(1) Compensation. Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Chief Benefits Director or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

§4.1 Essentials of evaluative rating.

This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. For the application

| Statement of the Case | *Department of Veterans Affairs* *Wilmington Medical and Regional Office Center* | | Page 4 03/17/99 |
|---|---|---|---|
| NAME OF VETERAN URMILA BANERJEE | VA FILE NUMBER [redacted] | SOCIAL SECURITY NR | POA |

of this schedule, accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition. Over a period of many years, a veteran's disability claim may require reratings in accordance with changes in laws, medical knowledge and his or her physical or mental condition. It is thus essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history.

§4.71a Schedule of ratings—musculoskeletal system.

5015 Bones, new growths of, benign.

The diseases under diagnostic codes 5013 through 5024 will be rated on limitation of motion of affected parts, as arthritis, degenerative, except gout which will be rated under diagnostic code 5002.

5003 Arthritis, degenerative (hypertrophic or osteoarthritis):

Degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved (DC 5200 etc.). When however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 pct is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under diagnostic code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, rate as below:

| | |
|---|---|
| With X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations | 20 |
| With X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups | 10 |

Note (1): The 20 pct and 10 pct ratings based on X-ray findings, above, will not be combined with ratings based on limitation of motion.

Note(2): The 20 pct and 10 pct ratings based on X-ray findings, above, will not be utilized in rating conditions listed under diagnostic code 5013 to 5024, inclusive.

**DECISION:**

1. Evaluation of residuals, stress fracture, left third metatarsal, which is currently 0 percent disabling, is increased to 10 percent effective June 16, 1998.
2. Service connection for chronic paranoid schizophrenia is denied.

| Statement of the Case | *Department of Veterans Affairs* *Wilmington Medical and Regional Office Center* | | Page 5 03/17/99 |
|---|---|---|---|
| NAME OF VETERAN URMILA BANERJEE | VA FILE NUMBER [redacted] | SOCIAL SECURITY NR | POA |

**REASONS AND BASES:**

1. The evaluation of residuals, stress fracture, left third metatarsal is increased to 10 percent disabling effective June 16, 1998. A 10 percent evaluation is assigned for painful or limited motion of a major joint or group of minor joints.

The VA examination of 7-9-98 showed there is good range of motion bilaterally with pain in the 3rd and 4th mid shaft during palpation of the left foot. X-rays show a questionable thickening of the shaft of the third metatarsal.

2. The law provides that a person who submits a claim for VA benefits must submit evidence sufficient to justify a belief that the claim is well grounded. A well-grounded claim is a plausible claim, one which has merit on its own, or is capable of substantiation. Such a claim need not be conclusive, but it must be accompanied by evidence which shows that the claimed condition exists and is possibly related to service.

A well-grounded claim for service connection requires evidence of a current disability, evidence of incurrence or aggravation of a disease or injury in service, and evidence of a nexus, or link, between the in-service injury or disease and the current disability. There is no record of treatment in service for chronic paranoid schizophrenia. In order to establish a well-grounded claim, it is necessary to provide evidence which demonstrates that the claimed condition was incurred in or aggravated by military service.

The veterans service medical records were silent for any treatment of diagnosis of schizophrenia. A mental status evaluation of 5-28-91 showed there is no evidence of mental disease or defect of psychiatric significance.

| **Statement of the Case** | *Department of Veterans Affairs* *Wilmington Medical and Regional Office Center* | | Page 6 03/17/99 |
|---|---|---|---|
| NAME OF VETERAN URMILA BANERJEE | VA FILE NUMBER [redacted] | SOCIAL SECURITY NR | POA |

PREPARED BY: ______________________
**K D Davis**

APPROVED BY: ______________________ 4-3-99
**L J Ferdman**

142803764-990317.SOC

From,
[redacted]

RECEIVED
MAR 4 1999
ADJUDICATION DIV.
WILM., DE 460/21

142.80.3764

February 28, 1999.
Charles T. Keenan
Veterans Affairs, Regional Office
1601 Kirkwood Highway
Wilmington, DE 19805

Dear Mr. Keenan,

I received my rating decision on February 6, 1999. I disagree with your rating decision with respect to my mental condition. I believe that I am unemployable in fact due to my illness and further that my mental illness is a product of my experiences in military service.

I also disagree with the 10% disability rating for my stress fractures. My injuries also make it impossible for me to hold a job that requires standing on my feet for long periods of time.

Looking forward to your response. Sincerely,

Urmila Banerjee
Urmila Banerjee

RECEIVED
MAR 4 1999
ADJUDICATION DIV.
WILM., DE 460/21

NOTICE OF DISAGREEMENT
Recorded 3/4/99

P179

000199

| 170 END PRODUCTS | APPEAL ACTIONS |
|---|---|
| END PRODUCT #: | 179 |
| Notice of Disagreement Received: | 3/3/99 |
| Statement of Case Mailed: | 4-3-99 |
| VAF 1-9 Received | |
| SSOC Mailed: | 1. |
| | 2. |
| | 3. |
| VAF 1-646 Received: | |
| VAF 1-8 Certified: | |
| Transferred to BVA: | |
| Remand by BVA: | |

ISSUE(S):

1. Eval nervous cond
2. Eval Stress Fx
3. 
4. 
5. 

| ADDED TO TRAVEL BOARD LOG: | |
|---|---|

000200

**DEPARTMENT OF VETERANS AFFAIRS**
**Board of Veterans' Appeals**
**Washington DC 20420**

Date: 4/28/99

In Reply Refer To: (0141A3)
[redacted]

URMILA BANERJEE
[redacted]

Dear Appellant:

The Board received notice of your appeal (VA Form 9). The law (38 U.S.C. Section 7107) requires that we consider appeals in the order in which we receive them. Right now, we are receiving claims folders for appeals docketed in the Fall of 1997.

The Board does not yet have your claims folder or any other records having to do with your appeal. In view of the time it takes us to process an appeal, we believe it is better for you to have your claims folder kept at the local VA office where you filed your claim until we are ready to review it. That way, you have access to your records, and local VA officials will be able to act on any other claim you may have while your appeal is awaiting review by the Board.

When the Board is ready to review your appeal, we will request your records from the local VA office. At the time your records are forwarded to the Board, the local VA office will send you a letter notifying you of the transfer and that you have 90 days from the date of the letter, or until the Board's decision date, whichever comes first, to add evidence to your appeal, to request a hearing or to select or change a representative.

You have the right to appear in person for a hearing before a member of the Board, either at your local VA office or at the Board's office in Washington, D.C. In addition to this "Board hearing," you also have the right to appear in person for a hearing before a local VA hearing officer. If you want a "local office hearing," you should contact your local VA office.

Until we receive your claims folder at our office in Washington, DC, the Board can only provide very general information about your appeal. Our telephone number is (202) 565-5436. Until then, your best source for information about the status of your appeal is your local VA office or your representative.

We have enclosed two pamphlets. The thin pamphlet contains the customer service standards we have pledged to meet. The other pamphlet provides answers to the most commonly asked questions about how the appeal system works. We hope you find these pamphlets informative and helpful.

Sincerely yours,

For Sandy Stackhouse

Nancy D. Stackhouse
Director, Administrative Service
By Direction of the Chairman

Enclosures (2)

000201

**DEPARTMENT OF VETERANS AFFAIRS**
Medical and Regional Office Center
1601 Kirkwood Highway
Wilmington DE 19805-4917

April 30, 1999

In Reply Refer To: 460/21/AES
CSS [redacted]
BANERJEE, U.

MS. URMILA BANERJEE
[redacted]

Dear Ms. Banerjee:

This is in reference to your claim for left hip, tibia & femur.

Service connection was previously denied for the above conditions 10/15/96 and you were advised of the denial by our letter of 10/22/96. You had one year from that date to appeal our decision. That decision is now final. In order to reconsider the claim, you must submit new and material evidence.

Evidence is considered new when it is not merely cumulative of the other evidence of record, and is considered material when it is relevant and probative of the issue at hand (evidence of the currently claimed disability and its incurrence or aggravation in service). By itself or in connection with evidence previously assembled it must be so significant that it must be considered in order to fairly decide the merits of the claim.

This evidence, or information, should be furnished as soon as possible, preferably within 60 days. The evidence must be received in the Department of Veterans Affairs within one year from the date of this letter; otherwise, if entitlement is established, benefits may not be paid for any period prior to the date evidence is received.

Sincerely yours,

C T Keenan

C. T. KEENAN
Customer Service Division

cc: ALG

banerjee3764.doc

(466)

OMB Approved No. 2900-0001
Respondent Burden: 1 hour and 30 minutes

Department of Veterans Affairs

# VETERAN'S APPLICATION FOR COMPENSATION OR PENSION

RECEIVED

IMPORTANT: Read attached General and Specific Instructions before completing this form. Type, print, or write plainly.

DO NOT WRITE IN THIS SPACE
VA DATE STAMP
APR 9 1999
By______

1A. FIRST, MIDDLE, LAST NAME OF VETERAN: URMILA — BANERJEE / CHATTERJEE

1B. TELEPHONE NO. (Include Area Code): DAY: 302 798 2677 EVENING:

1C. IF YOU SERVED UNDER ANOTHER NAME, GIVE NAME AND PERIOD DURING WHICH YOU SERVED AND SERVICE NUMBER: URMILA BANERJEE OCT '90 — JUN '91.

2. MAILING ADDRESS OF VETERAN (Number and street or rural route, city or P.O., State and ZIP Code): [redacted]

3A. VETERAN'S SOCIAL SECURITY NO.: [redacted]

3B. SPOUSE'S SOCIAL SECURITY NO.:

4. DATE OF BIRTH: [redacted]

5. PLACE OF BIRTH:

6. SEX: FEMALE

7. RAILROAD RETIREMENT NO.: —

8. HAVE YOU EVER FILED A CLAIM FOR COMPENSATION FROM THE OFFICE OF WORKERS' COMPENSATION PROGRAMS? (Formerly the U.S. Bureau of Employees Compensation) ☐ YES ☒ NO

9A. VA FILE NUMBER: C- [redacted]

9B. HAVE YOU PREVIOUSLY FILED A CLAIM FOR ANY BENEFIT WITH VA?
☒ NONE
☐ HOSPITALIZATION OR MEDICAL CARE
☐ DISABILITY COMPENSATION OR PENSION
☐ VOCATIONAL REHABILITATION
☐ VETERANS EDUCATIONAL ASSISTANCE
☐ DEPENDENTS EDUCATIONAL ASSISTANCE
☐ DENTAL OR OUTPATIENT TREATMENT
☐ WAIVER OF NSLI PREMIUMS
☐ OTHER (Specify)

9C. VA OFFICE HAVING YOUR RECORDS (If known): PHILADELPHIA PA; FORT SAM HOUSTON TX.

## SERVICE INFORMATION

NOTE: Enter complete information for each period of active duty. Attach DD Form 214 or other separation papers for all periods of active duty to expedite processing of your claim. If you do NOT have your DD Form 214 or other separation papers check (✓) here ☐

| 10A. ENTERED ACTIVE SERVICE DATE | PLACE | 10B. SERVICE NO. | 10C. SEPARATED FROM ACTIVE SERVICE DATE | PLACE | 10D. GRADE, RANK OR RATING, ORGANIZATION OR BRANCH OF SERVICE |
|---|---|---|---|---|---|
| 10 '90 | NEW JERSEY | [redacted] | ~~SAN ANTONIO TX~~ 6 '91 | SAN ANTONIO TX | E-4 U.S. ARMY ACTIVE DUTY. |
| | | | | | |

10E. HAVE YOU EVER BEEN A PRISONER OF WAR? (If "Yes," complete Items 10F and 10G) ☐ YES ☒ NO

10F. NAME OF COUNTRY:

10G. DATES OF CONFINEMENT:

## RESERVE AND NATIONAL GUARD SERVICE

NOTE: Enter complete information for each period of Reserve and National Guard service. Attach any separation papers you have.

| 11A. ENTERED SERVICE DATE | PLACE | 11B. SERVICE NO. | 11C. SEPARATED FROM SERVICE DATE | PLACE | 11D. GRADE, RANK OR RATING, ORGANIZATION OR BRANCH OF SERVICE |
|---|---|---|---|---|---|
| | | | | | BY: 6P110 4/2/96 VN |

12. IF DISABILITY OCCURRED DURING ACTIVE OR INACTIVE DUTY FOR TRAINING, GIVE BRANCH OF SERVICE AND DATE OF OCCURRENCE: U.S. ARMY MAY / JUNE 1991 NOV. 1990

13A. IF YOU ARE NOW A MEMBER OF THE RESERVE FORCES OR NATIONAL GUARD GIVE THE BRANCH OF SERVICE:

13B. RESERVE STATUS: ☐ ACTIVE ☒ INACTIVE ☐ RESERVE OBLIGATION

13C. RESERVE OR NATIONAL GUARD UNIT ADDRESS:

14A. ARE YOU NOW RECEIVING OR WILL YOU RECEIVE RETIREMENT OR RETAINER PAY FROM THE ARMED FORCES? ☐ YES ☒ NO (If "Yes," complete Item 14B, 14C, and 14D)

14B. BRANCH OF SERVICE: REGULAR ARMY

14C. MONTHLY AMOUNT: $

14D. RETIRED STATUS: ☐ PERMANENT ☐ TEMPORARY DISABILITY RETIRED LIST

15A. HAVE YOU EVER APPLIED FOR OR RECEIVED DISABILITY SEVERANCE PAY FROM THE ARMED FORCES? ☐ YES ☒ NO (If "Yes," complete Item 15B)

15B. AMOUNT: $

16A. HAVE YOU RECEIVED LUMP-SUM READJUSTMENT OR SEPARATION PAY FROM THE ARMED FORCES? ☐ YES ☒ NO (If "Yes," complete Item 16B)

16B. AMOUNT: $

## NATURE AND HISTORY OF DISABILITIES

17. NATURE OF SICKNESS, DISEASE OR INJURIES FOR WHICH THIS CLAIM IS MADE AND DATE EACH BEGAN:
PAIN SWELLING NUMBNESS IN LEGS - NOV. 90 & MAY/JUN '91 TILL PRESENT.
BROKEN LEFT THIRD METATARSAL, BROKEN LEFT & RIGHT HIP, LEFT & RIGHT FEMUR & TIBIA - MAY/JUN '91
CLINICAL DEPRESSION, MEMORY LOSS; DISORIENTED TO TIME/DAY/YEAR; PARANOIA - 5/91.

18A. ARE YOU NOW, OR HAVE YOU BEEN HOSPITALIZED OR FURNISHED DOMICILIARY CARE WITHIN THE PAST 3 MONTHS? ☒ YES ☐ NO (If "Yes," complete Items 18B and 18C)

18B. DATES OF HOSPITALIZATION OR DOMICILIARY CARE: 8.91 5.92 1.96. 9.91 12.95

18C. NAME AND ADDRESS OF INSTITUTION: PHILA VA HOSPITAL; DELAWARE VA HOSPITAL

000203

YOU MUST SIGN AND DATE THIS FORM AT THE BOTTOM OF PAGE 10.

Department of Veterans Affairs

## AUTHORIZATION FOR RELEASE OF INFORMATION

1. LAST NAME - FIRST NAME - MIDDLE NAME OF VETERAN *(Type or print)*
CHATTERJEE URMILA.

2. FILE NUMBER [redacted]

3. DATE OF BIRTH [redacted]

4. SOCIAL SECURITY NUMBER [redacted]

5. NAME AND ADDRESS OF HOSPITAL OR PHYSICIAN [redacted]
VA HOSPITAL.
1601 KIRKWOOD HIGHWAY
ELSMERE, DE.
VA HOSPITAL PHILADELPHIA
FT SAM HOUSTON TEXAS.
NEW JERSEY MILITARY BASE.

6. DATES OF TREATMENT
OCT. 1990 — TILL PRESENT.

I, the undersigned, hereby authorize the hospital or physician shown in Item 5 to disclose and release to the Department of Veterans Affairs (VA) any information that may have been obtained in connection with physical examination or treatment, with the understanding that VA will use this information in determining my eligibility to veterans benefits I have claimed. The responses which are submitted may be disclosed as permitted by law outside VA. I understand I may revoke this authorization at any time except to the extent action has already been taken in reliance thereon: This request is valid for ninety (90) days from the date in Item 7B unless sooner revoked by me in writing.

7A. SIGNATURE OF VETERAN OR LEGAL REPRESENTATIVE
Urmila Chatterji

7B. DATE
March 27th 1996.

8A. SIGNATURE OF WITNESS (Required)
[signature]

8B. DATE
3/27/96

VA FORM MAR 1992 **21-4142**
SUPERSEDES VA FORM 21-4142, AUG 1989, WHICH WILL NOT BE USED.

Department of Veterans Affairs

## AUTHORIZATION FOR RELEASE OF INFORMATION

1. LAST NAME - FIRST NAME - MIDDLE NAME OF VETERAN *(Type or print)*
CHATTERJEE URMILA.

2. FILE NUMBER [redacted]

3. DATE OF BIRTH [redacted]

4. SOCIAL SECURITY NUMBER [redacted]

5. NAME AND ADDRESS OF HOSPITAL OR PHYSICIAN
VA HOSPITAL. DELAWARE
1601 KIRKWOOD HWY
ELSMERE, DE.
FT. SAM HOUSTON TX.
DR. BURGHARDT.
NEW JERSEY MILITARY BASE — PODIATRY CLINIC.
VA HOSPITAL — PHILADELPHIA. DEPT. FOR BONES.

6. DATES OF TREATMENT
NOV. 1990. MAY/JUNE '91. 92 — TILL PRESENT.

I, the undersigned, hereby authorize the hospital or physician shown in Item 5 to disclose and release to the Department of Veterans Affairs (VA) any information that may have been obtained in connection with physical examination or treatment, with the understanding that VA will use this information in determining my eligibility to veterans benefits I have claimed. The responses which are submitted may be disclosed as permitted by law outside VA. I understand I may revoke this authorization at any time except to the extent action has already been taken in reliance thereon: This request is valid for ninety (90) days from the date in Item 7B unless sooner revoked by me in writing.

7A. SIGNATURE OF VETERAN OR LEGAL REPRESENTATIVE
Urmila Chatterji

7B. DATE
March 27th 1996.

8A. SIGNATURE OF WITNESS (Required)
[signature]

8B. DATE
3/27/96

000201

VA FORM MAR 1992 **21-4142**
SUPERSEDES VA FORM 21-4142, AUG 1989, WHICH WILL NOT BE USED.

Department of Veterans Affairs

# CONFIRMED RATING DECISION

1. TYPE OF CLAIM ☐ DISABILITY ☐ DEATH ☐ ACCRUED

2. FILE NUMBER [redacted]

3. INITIALS AND SURNAME OF VETERAN V. Chatterjee

4. DATE OF DEATH

5. REGIONAL OFFICE NUMBER 462

6. DATE OF LAST EXAMINATION

7. DATE OF THIS RATING 4-15-96

8. NARRATIVE

(X) Verify all service and character of service.

(X) Request all Service Medical and Dental Records.

( ) Request additional Service Medical Records for period to .

( ) Request discharge physical exam and/or Physical Evaluation Board Proceedings.

( ) Request claimant to specify the disease or disability claimed.

(X) Request continuity of treatment for claimed disability from RAD to date. 6/11/96/KD

(X) Request all out-patient and/or inpatient treatment records for treatment for all conditions from VAMC/VAM&ROC Wilm + Phila from 8/91 to present

( ) Send PTSD Development Letter.

( ) Request VAF 21-4142's from

( ) Request VAF 21-4192 from last employer.

( ) Send FL 21-104 letter to Dr.

( ) Development for Marriage and/or Birth Certificates

( ) Development for Dependent's Social Security Numbers

( ) Development for Social Security Award Rate

( ) Development for Family's Income

(X) Other Have veteran submit treatment records from Dr. Chatterjee + Claymont Health Center. 6/11/96 KD

9. EVIDENCE WAS RECEIVED SUBSEQUENT TO RATING ACTION DATED

This evidence does not warrant a change in the prior rating decision. Such decision is therefore CONFIRMED.

10. DECISION ON EXAMINATION REPORT

☐ VA FORM 21-2507 ATTACHED ☐ FUTURE EXAMINATION AS SCHEDULED ☐ NO EXAMINATION

11. FUTURE DATE CONTROLS

☐ REFER FOR TARGET INPUT

| ACTION | MONTH | YEAR | REASON |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

REASON CODES

01 – FUTURE PHYS.
02 – INDIVID. UNEMP. REVIEW
03 – HELPLESS CHILD REVIEW
04 – NSC TB 38 CFR 3.342 REVIEW

12. MEDICAL RATING SPECIALIST CHP. ☐

13. RATING SPECIALIST CHP. ☐

14. RATING SPECIALIST [signature] CHP. ☐

15. P/A

16. R. B. NUMBER

VA FORM

**DEPARTMENT OF VETERANS AFFAIRS**
Medical and Regional Office Center
1601 Kirkwood Highway
Wilmington DE 19805-4917

OCT 27 1999

URMILA BANERJEE
[redacted]

In Reply Refer To: CSS [redacted]
460/21/RCS/296
BANERJEE, Urmila

Dear Ms. Banerjee:

We have made a decision on your claim for increased disability compensation

**What We Decided**

1. Service connection is warranted for Paranoid Schizophrenia. The condition is evaluated at 70% from 6/16/98.

2. Service connection for stress fractures of both tibias is not warranted.

3. New and material evidence sufficient to reopen a claim to establish service connection for disabilities of the left hip and femur has not been submitted.

**Deferred Issues**

No decision has been made on your claim to establish service connection for stress fractures of the right hip, pubic bone, both knees, both heels, lumbar spine and right femur. The record is being returned to the local rating board for review of your response to our letter of 9/17/99. Separate correspondence will be sent when a decision is made on these issues.

**Appeal Withdrawn**

The grant of service connection for Paranoid Schizophrenia constitutes a full grant of all benefits sought on appeal on this one issue. There will be no need for referral to the Board of Veterans Appeals in Washington, D.C. We consider your appeal to be withdrawn on this one issue. If you wish to contest either the evaluation or the effective date, you must file a new Notice of Disagreement.

Your appeal will continue on the issue of the evaluation for the stress fracture of the left third metatarsal.

CSS [redacted]
Banerjee, Urmila

Effective 6/16/98 the combined degree of your service connected disabilities is 70%. Please bear in mind that the combined degree is not arrived at by adding up the percentages assigned to each disability. The combined degree is arrived at through the use of a Combined Rating Table contained in the Schedule For Rating Disabilities (*38 Code of Federal Regulations (C.F.R.), Book C, Paragraph 4.25*).

Also, current regulation (38 C.F.R. 3.31) requires that monetary benefits be paid from the first of the month following the month in which entitlement is established. Thus increased monetary benefits are paid from 7/1/98, not 6/16/98

**Award Adjustment**

We have processed an award in the amount(s) and from the date(s) shown below:
(Prior to the action described in this letter, you received 10% service connected disability compensation from 7/1/98 and non service connected disability pension from 2/1/99. Your monetary benefit is increased from 7/1/98 and changed from pension to service connected disability compensation as of 2/1/99. You cannot receive both pension and compensation. We pay whichever provides the greater monetary benefit.)

| Monthly Rate | Effective Date | Reason for Change |
|---|---|---|
| $905.00 | Jul 1, 1998 | Increased service connected disability compensation paid. |
| 916.00 | Dec 1, 1998 | Cost of Living Adjustment |

**Dependency Allowance**

Your are being paid as a single veteran with no dependents. Evidence of record does not indicate that you are married or have other dependents. If there is a change in your dependency status, fully complete and return the enclosed VA Form 21-686C.

**How We Made Our Decision**

We carefully considered all the evidence we received. We have attached a copy of the Rating Decision. It shows the evidence we used and the reasons for our decision.

CSS [redacted]
Banerjee, Urmila

You may be eligible for Department of Veterans Affairs (VA) vocational rehabilitation. The enclosed VA Form 28-8890 explains this benefit. To apply, complete VA Form 28-1900, and return it to this office.

**If You Think We're Wrong**

If you think our decision is wrong, you should write and tell us why. The enclosed VA Form 4107 explains your right to appeal.

We've also attached a VA Form 21-8764, Disability Compensation Award Attachment--Important Information, which explains certain factors concerning your benefits.

**Direct Deposit**

Your money may be deposited directly into your checking or savings account. This is the safest and most reliable way to get your money. To get more information about Direct Deposit, please call us at the toll free number below.

**If You Have Questions**

If you have any questions, call us toll-free by dialing 1-800-827-1000. Our TDD number for the hearing impaired is 1-800-829-4833. *If you call, please have this letter with you.*

Sincerely yours,

*C. T. Keenan*

C. T. KEENAN
Customer Service Division

Enclosure(s): Rating Decision
VA Form 28-1900
VA Form 28-8890
VA Form 21-8764
VA Form 4107
VA Form 21-686C

cc: ALG

SWORN STATEMENT OF URMILA BANERJEE

STATE OF DELAWARE )<br>
) S<br>
COUNTY OF NEW CASTLE )

Urmila Banerjee, being first sworn, makes the following statement relating to her discharge from the U.S. Army on 24 June 1991.

My name is Urmila Banerjee, my social security number is [redacted] My statement is based on my own recollection and the documents appearing in my service record which are included with my application for correction of military records.

I enlisted in the U.S. Army for six years on 9 October 1990 and I was separated from the Army for convenience of the government on 24 June 1991 with an Honorable discharge.

I completed basic training at Ft. Dix, New Jersey and was assigned to Ft. Sam Houston, Texas for training in a pharmacy career beginning in February 1991. During the first four months of my school, I was sexually harassed by members of my unit who were putting their hands on me. I also felt that an officer had a sexual interest in me which I found very disturbing. I remember filing a written complaint after some of these incidents, but I don't remember anything happening. Because there was so much physical activities required during the classes, I began to experience pains in my legs and feet. At times I felt as if there were broken bones in my feet and legs and I couldn't run or even walk sometimes.

On May 17, 1991 my commander and first sergeant counseled me that I was not motivated enough to be a good soldier, and that I had a poor attitude. I told them that I wanted to be released from the Army. A few days later, on May 22, 1991 Captain Wilhite, my commander, informed me officially that I was to be discharged from the Army. He said that in his judgment, I would not develop into a satisfactory soldier. I told him that my lack of motivation was due to the extended period of sexual harassment that was constantly bothering me, and that I had reported it to the legal office.

Later in the next month, on June 14, 1991, I was notified that I was to be separated from the Army with an honorable discharge. I was also informed of various rights I might have and I was told that I would receive a complete medical examination and a mental evaluation. I was very confused and very anxious during much of these proceedings, and I do not remember many of my discharge medical tests and evaluations.

After being out of the Army for a short time, I was feeling so confused and upset that I went to see some doctors at the Veterans Medical Hospital in Wilmington Delaware. They tried to help me, but I couldn't concentrate on what I was really feeling.

Since my discharge I tried many times to work and support myself, but I kept getting fired from the job or I just would quit. I was crying all the time. I had fainting spells and sometimes I thought that some people were after me.