Over the last few years, I began taking medication that has helped me cope with my feelings. During these times I also continued to try and get the VA to help me obtain some disability pay from the Army because of my inability to stay on my feet for very long. I think there are still some things wrong with my legs because of what happened to me in the Army.

I recently became aware of my right to have my discharge reviewed when I talked with Thomas Reed of the Veterans Assistance Program at the Widener University School of Law in October 1998. I learned from him that I might be eligible to have my discharge reviewed because I should have been given a formal physical and mental evaluation before I was discharged. It is very possible, that had I been given the evaluations, I might not have had such a hard time adjusting to civilian life and getting a job. Furthermore I probably would have been able to understand my feelings and emotions better so that I could have obtained medical help sooner.

I believe my discharge should be reviewed and if merited I should be awarded a disability pension/retirement.

DATED: MAY 22, 2000.

Urmila Banerjee
(Urmila Banerjee)

STATE OF DELAWARE )
)ss
COUNTY OF NEW CASTLE )

SUBSCRIBED AND SWORN TO before me, a notary public, this 22nd day of May, 2000.

My Commission Expires:
10-27-2001

Sharon G. Tatman
(Notary Public)
Sharon G. Tatman

**UNITED STATES ARMY**
**BOARD FOR CORRECTION OF MILITARY RECORDS**

IN the Matter of Urmila Banerjee,)
Petitioner) No. ____________________

**BRIEF IN SUPPORT OF PETITION FOR CHANGE OF DISCHARGE STATUS**

## I. ISSUES.

1. Should the Board of Correction of Military Records Waive the Three Year Statute of Limitations and Hear Ms. Banerjee's Petition?

2. Was Petitioner Urmila Banerjee Improperly Discharged without a Comprehensive Physical and Mental Evaluation as Required by AR 635-200 para. 1-34?

## II. JURISDICTIONAL STATEMENT

This petition is filed pursuant to 10 U.S.C. section 1552, authorized by 32 CFR section 581.3 Army Board for Correction of Military Records. This petition is Ms. Banerjee's first request for correction of her discharge records. Ms. Banerjee contends that she was discharged from the Army without receiving a full medical and neuropsychiatric evaluation documenting her physical leg injuries and her mental condition that existed at the time of her discharge. Petitioner Banerjee requests the Board waive the three year statute of limitations in this matter and consider her petition on the merits.

Ms. Banerjee submits that correction of her discharge is in the interests of justice because she has been diagnosed as a victim of Post Traumatic Stress Disorder (PTSD) and Schizophrenia connected with the sexual harassment she endured during her brief period of Army service. Because she received neither a physical or mental review board when she was separated from the Army, diagnosis and treatment of her disabling mental condition was not effective until 1997. She became aware of her discharge review rights in the fall of 1998 through the process of treatment and care Ms. Banerjee has received from the VA over the

past few years and through consultations with the Widener University Law School Veterans Assistance Program.

## III. FACTS

Petitioner Urmila Banerjee enlisted in the Army on 09 October 1990 for six years. After completing basic training she was stationed at Ft. Sam Houston, Texas, where she was to be trained in pharmacy. During her basic training, Ms. Banerjee suffered some documented trauma to her legs and feet. These were eventually documented in her exit physical of 30 May 91. She arrived on site at Ft. Sam Houston around January 1991. It was here, during her first four months of pharmaceutical training classes, that she experienced the sexual harassment that led to her eventual discharge. Ms. Banerjee was the conscious object of her commander's sexual advances, and she was also subject to many incidents of unwanted and unsolicited touching by soldiers in her unit. She made numerous and official complaints to her chain of command, but to no avail. She also met with Dr. Hansa Raval, an Army medical officer and counselor, who has provided corroboration of the above referenced activities in a letter attached to this petition. Dr. Raval saw a vibrant, energetic, and happy young woman, turn into a depressed, isolated individual in a recurring state of emotional turmoil. Even letters from Dr. Raval to Major General Moore did not avail Ms. Banerjee with relief and on 24 JUN 91 she was honorably discharged from the United States Army.

An examination of the physical and mental separation examinations afforded Ms. Banerjee do not contain sufficient information to insure she was properly informed of her present state of health at the time of her discharge. Ms. Banerjee was condemned to years of VA conducted diagnoses and treatment for illnesses that were incurred during her enlistment and not realized at her separation.

In approximately one month, July 1991, Ms. Banerjee was in the Veterans Medical Facility in Wilmington, Delaware complaining of various physical and mental illnesses all of which were service related. It was during the fall of 1991 that Ms. Banerjee was officially

diagnosed with Acute Schizophrenia, Paranoid Type MHC. The VA officially recognized Ms. Banerjee's diagnosis in September, 1999. The VA ruled the diagnosis was timely filed within one year of discharge and rated the disability at 70% effective June 16, 1998. It was after these findings that she was apprised of her discharge review rights relative to the mental illness so determined.

Even though Ms. Banerjee's mental illness was the subject of most of the VA treatment records during these times, she was also in constant pain and discomfort due to her leg and feet traumas suffered in the Army and in fact was on crutches for a time in May of 1996. Complete documentation of these physical injuries is included in this petition.

During the time between her discharge and the present time Ms. Banerjee has had an extremely difficult time keeping employed. She has a keen desire to be a productive member of society but cannot hold a job for very long due to her unstable mental condition. The VA records indicate on numerous occasions that Ms. Banerjee admitted that she was incapable of continuing with her latest job because she kept "fainting" or otherwise had trouble with relating to people. She has worked for McDonalds for 3 months in 1998, and previous to that she worked for Beneficial National Bank as a data entry operator in 1993, as a residential counselor in 1994-1995, as a mental health tech with BSI Services in 1995, and later at Happy Harry's as a clerk in 1998. In 1999 Ms. Banerjee was employed for six months with Delaware Micrographics working with microfilm.

As previously stated, Ms. Banerjee's disability rating is currently 70% due to the VA awarding a service connection for paranoid schizophrenia dated from June 16, 1998. There are still issues regarding the level of rating for the physical service related injuries to the legs and feet which are currently rated at 10%.

## IV. SUMMARY OF ARGUMENT

Petitioner Urmila Banerjee seeks review of her 24 June 1991 discharge for the convenience of the government from the U.S. Army. Ms. Banerjee contends that she was suffering from severe mental disease due to her experiences of sexual harassment while in training. She feels that she was denied formal medical board evaluations pursuant to her separation.

Ms. Banerjee's application for discharge review was filed more than three years after her discharge from the U.S. Army. Title 38 U.S. Code section 1552(b) permits the Board to waive the three year statute of limitations period. Case law on discretionary review of late petitions for review of discharge shows that Ms. Banerjee must persuade the Board that there was a justifiable excuse for the late petition and that the petition discloses a substantial injustice that requires correction.

First, Ms. Banerjee has a justifiable excuse for a late petition. She was mentally incapacitated due to PTSD and acute paranoid schizophrenia from early in 1991 until the fall of 1998 when she discovered that her discharge could be re-opened. When evidence of mental disorders are properly portrayed, waiver of the three year statute of limitations can be authorized because the serviceman had been precluded by his ailment from doing so.

Ms. Banerjee's request to re-open her discharge for a physical and mental evaluation is also based on fundamental issues of injustice. The unwanted sexual harassment that Ms. Banerjee suffered during the first months of 1991 resulted in her becoming mentally unstable, and when nothing she did made the harassment stop, she became traumatized. Dr. Hansa Raval, who was involved throughout the incidents as Ms. Banerjee's medical consultant, documented the change and effect of the incidents on Ms. Banerjee's mental state. Dr. Raval's report (included in this petition) along with the years of VA treatment records that followed her discharge indicate Ms. Banerjee was subjected to an injustice when she was not afforded the proper medical evaluation boards at the time of her separation, because such formal reviews conducted at that time would have given her a chance to identify her injuries and seek immediate medical assistance.

There is significant documentation that Ms. Banerjee has experienced difficulty in obtaining and keeping a job since her release from the Army. During her constant battle with understanding and controlling her emotions, she has moved from one type of employment to another. VA records indicate that Ms. Banerjee admitted that she was incapable of continuing her latest job because she kept fainting or otherwise had trouble dealing with people. She has demonstrated a persistent desire to remain employed and to become a productive member of society, however it has generally been too much for her and she returns to being unemployed. Records and oral discussions over the past nine years indicate she has had many different employment opportunities, but has never been able to remain employed for a significant time period. Ms. Banerjee's inability to maintain employment is linked to her persistent mental illness. An illness that should have been diagnosed and treated before her separation from the Army.

As a general rule, the Army is bound by its own regulations and a service member who is discharged in violation of these regulations has been unlawfully discharged. (See *Service v. Dulles,* 354 U.S. 363, 1 L. Ed. 2d 1403, 77 S. CT. 1152 (1957); *Conn v. United States,* 180 Ct. Cl. 120, 376 F. 2d 878 (1967); *Casey v. United States,* 8 Ct. Cl. 234 (1985)). Ms. Banerjee was discharged in violation of Army Regulation 635-200 para. 1-34 which mandates medical examinations for soldiers being separated under Chapter 13. While Ms. Banerjee did receive a separation physical and mental evaluation, they were not comprehensive and specifically did not address any symptoms of PTSD or paranoid schizophrenia that were evident to Dr. Raval.

When the Government releases a soldier from her active duty for convenience, it must provide both the soldier and attending medical personnel adequate descriptions of the reasons for separation. There is no evidence that any psychiatric evaluation was performed other than the cursory examination documented in the exit documentation. Ms. Banerjee expressly noted being the victim of sexual harassment incidents during her formal separation briefing with her

commander. Statements and allegations such as these normally would warrant further investigation, counseling and documentation, however none were received. Under the circumstances the Army had a duty to provide Ms. Banerjee with a full mental and physical evaluation before her discharge.

## V. ARGUMENT

### 1. SHOULD THE BOARD FOR CORRECTION OF MILITARY RECORDS WAIVE THE THREE YEAR STATUTE OF LIMITATIONS AND HEAR URMILA BANERJEE'S PETITION?

Petitioner Urmila Banerjee seeks review of her 24 June 1991 discharge because she was suffering from both physical and mental injuries at the time of her discharge. Ms. Banerjee contends that her service record indicated both physical and emotional injuries she had suffered during her enlistment period and that these data entitled her to medical and psychiatric boards of review during her separation processing.

Title 10 U.S.C. section 1552(b) states that:

> No correction may be made under subsection (a)(1) unless the claimant or his heir or legal representative files a request for the correction within three years after he discovers the error or injustice. However, a board established under subsection (a)(1) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

The Board has adopted a balancing approach towards waiving the three year limitations period. It considers the reason for the service member's delay and the potential merits of the service member's claim, based on a quick review of the case. See John J. Field, *Waiving the Discretionary Statute of Limitations Governing the Boards for Correction of Military*

*Records,* 62 G. WASH L. REV. 921, 942 (1994) (discussing judicial review of BCMR action on late petitions).

In *Mullen v. United States,* 19 Cl. Ct. 550 (1990), the United States Claims Court examined evidence by a psychiatrist and other sources that convinced them petitioner was suffering from PTSD at the time of his discharge. The Claims Court held that, the serviceman was entitled to waiver of the three-year statute of limitations period for filing of application to correct records, because he had been precluded by his ailment from doing so. Furthermore, they went on to find that since Mr. Mullen had only recently became aware of PTSD disability, his filing was actually within the prescribed three year time limit. Both of these findings in the *Mullen* support Ms. Banerjee's case. She has been diagnosed with PTSD and Schizophrenia dating back to the time before her discharge. She was unable due to her ailment to comprehend her discharge rights. Ms. Banerjee's mental state after separation grew progressively worse, so that by 1997, or approximately six years after her discharge, Ms. Banerjee had to be hospitalized for her condition. During this time it would be inconceivable that she possessed the necessary mental state to be aware of her discharge review rights. Only after stabilization of her mental trauma in early 1998 was she capable of assessing the origin and nature of her affliction. It was from this time that she began to be aware of her illness and as in *Mullen,* when she was advised of her rights to a discharge review, she initiated this petition.

Ms. Banerjee's mental illness has been extensively documented. Evaluations by her therapists and comprehensive physical and mental examination and testing results may be found in the Veterans Affairs Department claim file, a copy of which precedes this brief. Evidence of service-connected disability from a Veterans Affairs Department case file should be considered by the Board in assessing a service member's claim for service-connected disability retirement or severance pay. *Jordan v. United States,* Ct. Cl. 1974, 205 Ct. Cl. 65. The records included in this petition show a continual steady decline of Ms. Banerjee's ability

to function in the mainstream society and should be considered as a whole indicative of her likely mental state at the time of her discharge.

Military Correction Boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief. *Yee v. United States*, Ct. Cl. 1975, 512 F.2d 1383, 206 Ct. Cl. 388. The injustice Petitioner alleges for consideration of her claim at this time, centers around the sexual harassment she suffered during the first six months of 1991. As documented in Colonel Hansa B. Raval's letter to Mr. Reed, Ms Banerjee was subjected to repeated episodes of sexual advances and abuse by members of her unit. Dr. Raval, Col. U.S. Army Medical Corps (Ret), was on active duty at Ft. Sam Houston when she counseled Ms. Banerjee. Dr. Raval relates from her experiences with Ms. Banerjee that throughout these incidents, her mental health diminished with each unredressed episode. Even though these incidents were reported to the proper authorities during these months, Dr Raval noted a dramatic change in the emotional stability of her patient. Soon after these meetings with Dr. Raval, Ms. Banerjee documented the harassment on the General Counseling Form, which she filled out during her separation process. No response, counseling, or attention to these complaints are documented in any of the discharge records. The merits, upon a cursory reading, indicate that Ms. Banerjee deserves a review and appropriate correction of her military discharge records.

.

**2. WAS PETITIONER URMILA BANERJEE IMPROPERLY DISCHARGED WITHOUT A COMPREHENSIVE PHYSICAL AND MENTAL EVALUATION AS REQUIRED BY AR 635-200 para. 1-34?**

Generally, the United States Army is bound by its own regulations and a service member who is discharged in violation of these regulations has been unlawfully discharged. (See *Service v. Dulles*, 354 U.S. 363, 1 L. Ed. 2d 1403, 77 S. Ct 1152 (1957); *Conn v. United*

*States,* 180 Cl. Ct. 120, 376 F. 2d 878 (1967); *Casey v. United States,* 8 Cl. Ct. 234 (1985)). Ms. Banerjee was discharged in violation of Army regulations.

AR 635-200 para. 1-34(a) states that:

" Medical examinations are required for soldiers being processed for separation . . . under Chapter 13"

(c) Detailed information about the reasons for considering a soldier for separation will be provided to attending medical personnel to permit thorough understanding of the contemplated action . . .

No responsible line officer or medical corps officer investigated Ms. Banerjee's mental condition, even though she repeatedly reported sexual harassment incidents to her Company Executive Officer and exhibited severe psychological difficulties in dealing with ordinary duty that led to her discharge for convenience of the Government. Captain Wilhite, her commanding officer recorded " Ms. Banerjee cannot or will not adapt socially and emotionally to military life" on his recommendation for separation dated 14 JUN 91. This and other official documentation created during the middle of June 1991, do not reflect any indication that those in Ms. Banerjee's command chain were aware of the nature of her problems of adjusting to the military way of life. She wrote, in a space just under Captain Wilhite's signature, that she " had a conscious lack of motivation on my part because of *an extended period of sexual harassment which was reported to the E.O.* This statement was included in the last of two General Counseling Forms Ms. Banerjee was given during May of 1991. There was enough information available to any concerned party to show that Ms. Banerjee needed more than the cursory physical and medical exam she was given at separation.

AR 635-200 para. 1-35 states that:

(a) Except in separation actions under chapter 10 and as provided in (b) below, disposition through medical channels takes precedence over administrative processing.

(b) When the medical treatment facility (MTF) commander or attending medical officer

determines that a soldier being processed for administrative separation under chapter 7 . . . does not meet the medical fitness standards for retention (AR 40-501), he or she will refer the soldier to a Medical Evaluation Board . . .

AR 40-501 para. 3-4 states that:

Possession of one or more of the conditions listed in this chapter does not mean automatic retirement or separation from the Service. Physicians are responsible for referring soldiers with conditions list below to an MEB. It is critical that MEBs are complete and reflect all medical problems and all physical limitations the soldier has. Determination of fitness or unfitness will be made by a PEB . . .

Ms. Banerjee was suffering from the emotional trauma associated with the sexual harassment she experienced during the first months of 1991. The effect of these incidents were chronicled by Colonel Hansa Raval who counseled Ms. Banerjee during the events. In reference to the enclosed letter, it is clear that Ms. Banerjee's physical and mental condition corresponded to those described in para. 3-33 of AR 40-501 ( Neurotic disorders), and thus demanded an MEB (and PEB) evaluation upon separation from the Army.

Ms. Banerjee's post military record, compiled over the last decade, indicates that she has not been able to establish a stable existence. Numerous examples are documented in the records, that she has not been able to keep a steady job or enjoy any of the fruits of modern society. It can be argued, that had Ms. Banerjee been properly evaluated when she was discharged from the Army, prompt detection and diagnosis of her mental disabilities would have led to proper and effective treatment, and spared her and her family years of anguish and frustration.

## VI. CONCLUSION

The purpose of the governing Army Regulations discussed herein has to be, that the enlisted soldier, injured in the service of his or her country, must be formally evaluated

regarding those injuries, so that a fair and proper course of treatment and assistance can be applied. This policies also protect the commanders of injured soldiers by giving them clear, definitive guidelines to follow when separation is required. During the early part of her enlistment, Ms. Banerjee was the object of some unwanted and offensive conduct by soldiers in her unit. She filed complaints, went to formal counseling, and made every effort to alert her authorities that she could not function efficiently in such an environment. Now all she had was disillusionment and expressed a desire to be discharged. The responsibilities of command may not be clear during these incidents, and discretion and compassion sometimes reluctantly administered, but upon separation the regulations must be followed. Ms. Banerjee's decade of turmoil and despair were a direct result of not being evaluated properly upon her discharge, and therefore it is requested that the Board review all the enclosed documents to determine the extent and degree of disability she possessed at the time of separation from the Army and provide appropriate relief.

Dated: 12 April 2000

Thomas J. Reed
Attorney for Petitioner
Widener University School of Law
Veterans Assistance Program
P.O. Box 7474
Wilmington, DE 19803
TEL (302) 477-2070

mrw

Date: AUG 19,1999 Compensation and Pension Exam Report Page: 1

WILMINGTON, DE

** REPRINT OF FINAL **

Processing time: 43

For MENTAL DISORDERS (NOT INITIAL PTSD OR EATING DISORDERS) Exam

===

Name: BANERJEE,URMILA

SSN: [redacted] (B3764

C-Number:

DOB:

Address: [redacted]

City,State,Zip+4:
CLAYMONT DELAWARE 19703-1230

Res Phone: 302-798-2677
Bus Phone:

Entered active service: OCT 8,1990
Released active service: JUN 24,1991

Last rating exam date:

Priority of exam: Other

===

Examining provider: LAWRENCE ELWOOD, Ph.D.
Examined on: MAY 27,1999

===

Examination results:

HISTORY: This patient is a 33 -year-old East Indian female veteran. She served in the military from 10/8/90 until 6/24/91. She understood the purpose of today's interview.

The veteran indicated that when she entered the military, that she was "not ready for sexual advances from men". She indicated that she received roses regularly and was harassed by men hugging and groping her. At approximately the same time, her legs began to hurt her from much running and marching. She was sent to Fort Sam Houston and received an MRI and discharged with crutches, Motrin and flat wooden shoes. She said that since her discharge from the military in 1991, her mental condition has continued to deteriorate. She came to the MHC for treatment, but when it was recommended that she be admitted to the Perry Point VAMC, she ran away and got herself into a meditation program. Physically, she is unable to stand or walk for an extended period of time. Her legs tremble and she must sit down. Before her military discharge, she was briefly interviewed by a Psychologist as part of a pre-discharge evaluation. However, the veteran reported that she was afraid to tell him the story of her sexual harassment for fear that she would get raped or murdered by her harasser. Since 1991, the veteran has been followed in the MHC by Ms. Stanton, MSW, and since 1998 has been receiving Haldol injections ordered by Dr. Zevin. The veteran was married in a pre-arranged marriage, by her parents, to an East Indian doctor. This marriage ended only one year later when her husband hit her and her parents. The veteran reflects back on this year and wonders if she was "crazy" and drove her husband away. During that year she recalls being very unaffectionate and frigid.

Continued on next page
VA Form 2507

Name: BANERJEE,URMILA SSN: [redacted] C-number: [redacted]
For MENTAL DISORDERS (NOT INITIAL PTSD OR EATING DISORDERS) Exam

Exam Results Continued

OCCUPATIONAL HISTORY: The veteran currently resides with her parents. She is well-educated and holds a BA degree in Psychology from the University of Delaware and a Masters in Clinical Psychology from West Chester University. Since 1991 she has held numerous jobs for only a short period of time in mostly a sales or clerical or customer rep capacity. She said that she was always fired after a few weeks or months because she was slow, unable to meed job requirements or unable to deal properly with customers. She found each job to be extremely stressful and the stress would often lead to a "fever". She stated that she was unaware that she was having problems interacting with customers. One of her most recent jobs was at the Happy Harry's drug store, which only lasted three weeks because of interpersonal problems. Since 3/3/99 she has worked for Delaware Micrographics doing preparation, scanning, indexing and microfilming documents. She is uncertain as to how long this job will last because she is struggling to get up in the morning to go to work. She is tired and frustrated by having so many jobs since 1991 and would like to get well emotionally and find employment that is satisfying and that uses her extensive education.

CHIEF COMPLAINTS: The veteran complained that she easily forgets things and is easily startled by loud and sudden noises. She alternates between difficulty getting to sleep and sleeping excessively. She finds herself feeling angry when she recalls all of the sexual harassment she endured in the Army. She may experience sudden outbursts of anger at work, or go into a crying spell. She often feels that her harasser in the military continues to make trouble for her and that even her mother is trying to poison her. On one occasion she claims to have seen the Hindu god in front of her, but most often he is telling her what to do through a voice in her head. The veteran complained that she has started taking some swim lessons because she felt that it would be good for her legs. She becomes so tired that she wonders if it is really worth it. She denied having any friends and reported that when not working, she tries to help her parents out by working in the garden, cooking or helping with other routine household chores.

OBJECTIVE FINDINGS: The veteran drove herself to the interview after working a half-day at her new job. She is a short East Indian female who is moderately obese. She was attired neatly and well-groomed. She wore glasses throughout the interview and she had earrings in both ears. She also wore a ring on the middle finger of her left hand. She was considerably anxious during the interview and often quite intense. Her speech was clear and, at times, loud. She was articulate and she appeared

continued on next page
VA Form 2507

Exam Results Continued

to possess above average intelligence. Her concentration was good, but there was some noticeable impairment of both short and long term memory when her anxiety increased. Insight is considered good. Judgement fair. She was able to perform serial 7s and abstract reasoning ability was adequate. She exhibited paranoid delusions and she has active auditory hallucinations. The veteran is competent to manage her affairs.

DIAGNOSES:
Axis I: Schizophrenia, paranoid-type, chronic and severe
Axis II:No diagnosis
Axis III:Bilateral leg condition secondary to military service
Axis IV:Stressors from both military service, as well as current psychosocial stressors.
Axis V:Global Assessment of Functioning: 40

The veteran continues to be paranoid and occasionally experiences auditory hallucinations. She was married and divorced after only one year. She denies having any friends. She has held numerous jobs, but only for short periods since her military discharge in 1991. She is frequently fired because she is a slow worker, unable to satisfy job requirements, and interpersonal difficulties. She is angry and frustrated and fearful of the future. Clearly she is able to obtain employment, but it is doubtful in her present state that she will ever be able to sustain gainful employment. She was strongly encouraged to continue her psychiatric care through the MHC.

LAWRENCE K. ELWOOD, Ph.D.

LE/cb
DMT #5663
DD: 5/30/99
DT: 5/31/99

BANERJEE, Urmila
[redacted]

Adequated by: ______________________ Date: __________

Physician signature: ______________________ Date: __________

VA Form 2507

WILMINGTON, DE
** REPRINT OF FINAL **
Processing time: 43
For JOINTS (SHOULDER/ELBOW/WRIST/HIP/KNEE/ANKLE) Exam

==================================================================================

Name: BANERJEE,URMILA

SSN: [redacted] (B3764
C-Number:
DOB:

Address: [redacted]

City,State,Zip+4:
CLAYMONT DELAWARE 19703-1230

Res Phone: [redacted]
Bus Phone:

Entered active service: OCT 8,1990
Released active service: JUN 24,1991

Last rating exam date:

Priority of exam: Other

==================================================================================

Examining provider: ROBERT GLAZER, M.D.
Examined on: MAY 18,1999

==================================================================================

Examination results:

REASON FOR EXAM: Ms. Banerjee is being evaluated for residual of stress to her lumbar spine, right hip, pubic bone, knees, and heels.

MEDICAL HISTORY: Ms. Banerjee gave the history that her back pain, which is located in the thoracolumbar area started somewhere around 12/90 while in military service, carrying ruck sacks. Pains in numerous other areas started in 1991 approximately May. These pains involve both hips, left more than right, and both knees laterally, and both heels posteriorly. She said that she had experienced stress fractures of her pelvis, hips, femurs, knees, and heels. She said that she was released from service due to these problems. Pains in these areas occur at varying intervals for several minutes at a time. She said that the pains prevent her from standing more than short periods of time and have interfered with her ability to work.

PHYSICAL EXAM: She has a normal station and gait. The thoracolumbar spine had 70 degrees of forward flexion, 35 degrees of extension, and 35 degrees of right and left lateral bending with no pain on extremes of motion and no local tenderness.

The right hip had 115 degrees of flexion, 70 degrees of external rotation, 30 degrees of internal rotation, and 30 degrees of abduction. This was equal to motion of the left hip. There was mild diffuse tenderness at the lateral aspect of both hips.

Both knees had 5 degrees of hyperextension and flexion to 130 degrees

continued on next page
VA Form 2507

Name: BANERJEE,URMILA SSN: [redacted] C-number: [redacted]
For JOINTS (SHOULDER/ELBOW/WRIST/HIP/KNEE/ANKLE) Exam

---

Exam Results Continued

with minimal discomfort. Ligaments were intact, there was no joint effusion, there was no warmth or discoloration. There was no crepitus with motion. She had vague, diffuse tenderness about the right half of the right knee and mild tenderness at the anterolateral aspect of the left knee.

The pubic bone was non-tender to exam today.

Both ankles had 20 degrees of dorsiflexion and plantar flexion to 70 degrees. Inversion was 30 degrees and eversion was 5 degrees at the subtalar joints, right and left. There was no swelling or discoloration. She reported mild tenderness at the back of both heels.

I reviewed x-rays taken today of the lower thoracic and lumbosacral spine. They appeared normal. I reviewed x-rays of the pelvis and both hips. They all appeared normal. X-rays of both knees showed mild narrowing of the medial joint space, but no other abnormalities. X-rays of both feet and heels were normal. There were also x-rays of the hips, knees, ankles, and feet from 2/13/99. They were all reported normal.

IMPRESSION:
1) Multiple pain complaints involving the thoracolumbar spine, both hips, both knees, and both heels.

There is no evidence of any residual of any stress fractures in any of the x-rays I reviewed, or in the reports of the previous x-rays. The physical findings on exam show essentially normal motion with no significant discomfort on motion, therefore, there is no objective evidence to support the degree of pain complaint present. Therefore the functional impairment would be relatively mild, at most.

6/15/99 - A bone scan was done on 6/9/99 to assess the status of the left proximial femur which showed increased uptake on a bone scan done 5/9/96. The present scan no longer showed that increased uptake or any other abnormality besides a previously noted slight scoliosis.

This finding supports the conclusions I set forth earlier. The slight scoliosis is not responsible for symptoms.

ROBERT M. GLAZER, M.D.

Continued on next page
VA Form 2507

C&P Reprint of Final Report



Name: BANERJEE,URMILA SSN: [redacted] C-number: [redacted]
For JOINTS (SHOULDER/ELBOW/WRIST/HIP/KNEE/ANKLE) Exam

---

Exam Results Continued

RG/cb
DMT #5073
DD: 5/18/99
DT: 5/19/99

BANERJEE, Urmila
[redacted]

Adequated by: ______________________ Date: __________

Physician signature: ______________________ Date: __________

VA Form 2507

NAME : BANERJEE,URMILA
SSN : [redacted]
W
AGE : 33
PHYSICIAN: GLAZER,ROBERT
LAST EXAM: FEB 17,1999 11:37
EXAM DATE: MAY 18,1999 12:30
DIAG CODE: MINOR ABNORMALITY

PATIENT LOC : C&P-ORTHO
PROCEDURE : SPINE LUMBOSACRAL MIN 4 VI
TECHNICIAN : GIEBEY,BERNARD R
RPT ENTERED : MAY 19,1999 08:21
DTE REPORTED:
HOSPITAL LOC: WILMINGTON
SEX : FEMALE

===========================================================================

(Case 233 COMPLETE) SPINE LUMBOSACRAL MIN 4 VIEWS (72110)
Exam Modifiers : None

Clinical History:
C&P EXAM - L-S SPINE - 4 VIEWS

Report:
BANERJEE 3764, LUMBOSACRAL SPINE: The vertebrae are normal in height. The intervertebral disk spaces are normal. The pedicles, transverse processes, spinous processes and curvature are unremarkable. The patient states that she is not pregnant and refused lead shielding of her abdomen and pelvis.

Impression:
There are no bony abnormalities.

Primary Diagnostic Code:
MINOR ABNORMALITY

Primary Interpreting Staff:
THEODORE M JOHNSTON JR, TMJ (Verifier)

/TS

NAME: BANERJEE,URMILA
SSN : [redacted]
VAF 10-9034 VICE VAF SF519

VERIFIED DATE: MAY 20,1999 17:57
VERIFIED BY : JOHNSTON,THEODORE M JR

VAF 10-9034 VICE SF 519B RADIOLOGY/NUCLEAR MEDICINE REPORT

NAME : BANERJEE,URMILA
SSN : [redacted]
AGE : 33
PHYSICIAN: GLAZER,ROBERT
LAST EXAM: FEB 17,1999 11:37
EXAM DATE: MAY 18,1999 12:30
DIAG CODE: MINOR ABNORMALITY

PATIENT LOC : C&P-ORTHO
PROCEDURE : HIP 2 OR MORE VIEWS
TECHNICIAN : GIEBEY,BERNARD R
RPT ENTERED : MAY 19,1999 08:24
DTE REPORTED:
HOSPITAL LOC: WILMINGTON
SEX : FEMALE

================================================================================

(Case 234 COMPLETE) HIP 2 OR MORE VIEWS (73510)
Exam Modifiers : BILATERAL EXAM

Clinical History:
C&P EXAM - BOTH HIPS - 2 VIEWS

Report:
BANERJEE 3764, BOTH HIPS: There is no evidence of a fracture or dislocation. Joint space is normal bilaterally. There is no evidence of bony erosion. The patient states that she is not pregnant and refused lead shielding of her abdomen and pelvis.

Impression:
No bony abnormalities.

Primary Diagnostic Code:
MINOR ABNORMALITY

Primary Interpreting Staff:
THEODORE M JOHNSTON JR, TMJ (Verifier)

/TS

NAME: BANERJEE,URMILA
SSN : [redacted]
VAF 10-9034 VICE VAF SF519

VERIFIED DATE: MAY 20,1999 18:00
VERIFIED BY : JOHNSTON,THEODORE M JR

VAF 10-9034 VICE SF 519B RADIOLOGY/NUCLEAR MEDICINE REPORT