**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| URMILA BANERJEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-829C |
| v. | ) | (Judge Horn) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT STATEMENT OF FACTS**

Pursuant to this Court's February 21, 2007 order, plaintiff and defendant file the following statement of facts based upon the Administrative Record:

1. The plaintiff, Urmila Banerjee, enlisted in the United States Army and entered active duty on October 9, 1990. AR 280.[1] Ms. Banerjee attained the rank of Specialist, pay grade E-4, and was released from active duty on June 24, 1991. Id. She completed basic training at Fort Dix, New Jersey, AR 300, and was assigned to the Academy of Health Sciences, at Fort Sam Houston, Texas, for advanced individual training. AR 301.

2. On May 17, 1991, Ms. Banerjee was counseled that her overall behavior was not in keeping with military standards. AR 291. Ms. Banerjee indicated that she did not wish to remain in the Army and requested to be discharged. Id. On May 22, 1991, Ms. Banerjee was again counseled regarding her motivation and ability to become a productive soldier and was advised that proceedings were being initiated to separate her from the Army. AR 289. She once again indicated her desire to be discharged. Id.

---

[1] "AR __" refers to the Administrative Record.

3. In preparation for her recommended separation, Ms. Banerjee underwent a medical examination and mental evaluation. AR 62-69. On May 28, 1991, Major Stephen Brannan, an Army Medical Services Officer, gave Ms. Banerjee a Mental Status Evaluation. AR 64. Major Brannan found her to be fully alert and oriented, to have good memory, and a clear and normal thought process. Id. Further, Major Brannen determined Ms. Banerjee had the mental capacity to understand and participate in the proceedings, and was mentally responsible. Id. He specifically found that she met the retention requirements of Chapter 3, Army Regulation 40-501, Standards of Medical Fitness. AR 64. He also stated there was "no evidence of a mental disease or defect of psychiatric significance or of sufficient severity to warrant disposition through medical channels." Id. After noting her continued desire to be separated, he concluded that she was cleared for administrative action deemed appropriate by her command. Id.

4. On May 22, 1991, a bone scan was performed on Ms. Banerjee that found a stress fracture of the distal third metatarsal of the left foot, as well as stress related changes of the tibias and the left foot. AR 69. The treating medical officer did not recommend that Ms. Banerjee be reviewed by a Medical Evaluation Board, although the stress fractures were noted on May 22, 1991. Id. On May 31, 1991, Ms. Banerjee underwent a medical examination as a part of the separation proceedings. AR 62, 63, 66. The examination also revealed that she had stress fractures. Id. The physician concluded that although Ms. Banerjee had stress fractures, she was nevertheless qualified for separation. AR 66.

5. On June 5, 1991, Ms. Banerjee was relieved from her advanced individual training in her military occupational specialty, 91Q (Pharmacy Specialist), because she was

being processed for separation. AR 305. On June 14, 1991, Ms. Banerjee's commander initiated separation proceedings under Army Regulation 635-200, Chapter 13, for unsatisfactory performance. AR 285-88. Ms. Banerjee was advised of her rights, which she acknowledged with her initials and signature. Id. The appropriate separation authority approved Ms. Banerjee's discharge and issuance of an honorable discharge. AR 281.

6. On June 24, 1991, Ms. Banerjee was honorably discharged from the Army under the provisions of Army Regulation 635-200, Chapter 13, for unsatisfactory performance. AR 280.

7. On May 22, 2000, Ms. Banerjee submitted an Application for Change of Discharge to the Army Board for Correction of Military Records ("ABCMR"). AR 6, 15-279. Ms. Banerjee requested that her military records be corrected to indicate she is qualified for disability retirement or pension. AR 6. She stated that she was entitled to a formal Medical Review Board prior to her separation. Id.

8. Ms. Banerjee's application included a statement from Colonel Hansa Raval, a retired Army Medical Corps Officer, regarding Ms. Banerjee's application, AR 20; her military records, AR 21-82; as well as medical records for treatment she received after her discharge from the Army, and disability rating decisions from the Veterans Administration ("VA"). AR 83-279.

9. Ms. Banerjee's VA medical records indicate that beginning July 23, 1991, she was seen for various issues, including hip, arch, knee, and thigh pain. AR 85. An August 15, 1991, VA radiology report stated a bilateral exam indicated a normal right and left knee. AR 83. Ms. Banerjee continued to receive occasional treatment related to her knee,

foot, and hip pain. This included an April 28, 1992, examination that indicated a good range of motion to knees and hip, no edema, and no tenderness. AR 99.

10. Ms. Banerjee's VA medical records also indicate that she was seen by a VA psychiatrist on July 25, 1991, one month after her discharge. AR 86. At that time, Ms. Banerjee was diagnosed "with a profile of a character disorder and depression." Id. Ms. Banerjee was seen on a weekly basis, AR 89, and was diagnosed with "Incipient schizophrenic decompensation" at a follow up visit on August 15, 1991. AR 90. On August 23, 1991, Ms. Banerjee was diagnosed with acute schizophrenic disorder. AR 93. She continued to receive treatment from the VA in the following years after her diagnosis. AR 95-122.

11. Ms. Banerjee's VA records also indicate that on October 15, 1996, the VA issued a rating decision regarding Ms. Banerjee's claims. AR 126-27. The VA determined:

> 1. Service connection for residuals, stress fracture, left third metatarsal is granted with an evaluation of 0 percent effective March 29, 1996.
> 2. The claim for service connection of delusional disorder (claimed as depression) is not well grounded.
> 3. The claim for service connection of fractures of left hip, left tibia and femur and pain/swelling in legs is not well grounded.

AR 126.

12. Ms. Banerjee's VA records also indicate that on January 5, 1999, the VA issued a rating decision regarding Ms. Banerjee's claims. AR 179-82. The VA determined:

> 1. Evaluation of residuals, stress fracture, left third metatarsal, which is currently 0 percent disabling, is increased to 10 percent disabling effective June 16, 1998.
> 2. Service connection for chronic paranoid schizophrenia is denied.
> 3. Entitlement to pension is granted.

AR 179.

13. Ms. Banerjee's VA records also indicate that she filed a Notice of Disagreement with the January 5, 1999 rating decision, which was received by the VA on March 4, 1999. AR 193.

14. Ms. Banerjee's VA records also indicate that on March 17, 1999, the VA issued a Statement of the Case summarizing its January 5, 1999 decision. AR 193-98. The VA again determined:

> 1. Evaluation of residuals, stress fracture, left third metatarsal, which is currently 0 percent disabling, is increased to 10 percent effective June 16, 1998.
> 2. Service connection for chronic paranoid schizophrenia is denied.

AR 196.

15. Ms. Banerjee's VA records also indicate that she then appealed the VA decision to the VA Board of Veterans' Appeals. AR 201.

16. Ms. Banerjee's VA records also indicate that on September 17, 1999, the VA issued a rating decision regarding Ms. Banerjee's claims. AR 128-32. The VA determined:

> 1. Service connection for paranoid schizophrenia is granted with an evaluation of 70 percent effective June 16, 1998.
> 2. Service connection for stress changes, tibias (claimed as stress fractures) is denied.
> 3. New and material evidence adequate to reopen the claim for left hip and femur has not been submitted.

AR 128. Service connection for paranoid schizophrenia was granted on the basis of presumption. Id.

17. Ms. Banerjee's ABCMR application also included her sworn statement and

supporting brief. AR 209-21.

18. Ms. Banerjee's VA medical records dated June 13, 1999, indicate "[t]here is no evidence of stress fracture." AR 235.

19. On August 8, 2002, the National Institute of Mental Health forwarded evaluation records for Ms. Banerjee to counsel for Ms. Banerjee. AR 355. Doctor José Apud reported that Ms. Banerjee was admitted to a special study group on July 18, 2001 and was discharged January 15, 2002. AR 357. In his discharge summary, Dr. Apud noted that at time of admission, Ms. Banerjee was:

> On admission the patient was pleasant, cooperative with mild psychomotor retardation, coherent. Her affect was mildly blunted and mood was normal. She denied hearing voices or having paranoid or bizzare [sic] delusions at that time. She denied depression and suicidal ideation or plans. She denied mood swings, hypomania or visual, olfactory or gustatory hallucinations. She was alert to time, person and place. Her attention and concentration as well as her memory were unremarkable. She had a good fund of knowledge, good abstract thinking but fair insight.
>
> Her medications included haloperidol, 1 mg three times a day and quetiapine, 200 mg three times a day. Chemistry profile was within normal limits.

AR 358.

20. Doctor Apud also noted that Ms. Banerjee complained of left hip joint pain and an orthopedic consultation was requested. The consultant diagnosed Ms. Banerjee with greater trochanteric bursitis and recommended Naprosyn or Aleve 500 mg twice a day. AR 358.

21. On July 27, 2001, Dr. Apud took a history of Ms. Barnerjee's illness. He noted that:

> Patient admitted that her illness started in October 1990 at the time she was enrolled in the army. However, reports from mom's family indicate that as early as 1889 [sic], they noticed periods of high mood and increased energy, with grandiosity. There was no history of sleep difficulties, changes in attention and concentration, increase in goal directed activity, or spending

> sprees. At the time of her first psychotic break in October, 1990, patient felt that people were talking about her. She felt she was stalked around the campus, with thoughts that someone was poisoning her food and felt that male recruits and officers were sexually harassing her. On one occasion during training, she heard voices telling her to march in a different direction. She attempted to dismiss her delusional thoughts, but her job performance progressively deteriorated, had problems waking up in the morning, and developed self-care deficit concerning her personal hygiene and clothing. She also reported having problems communicating with people and that peers could not understand what she was telling them. By father's report, a psychologist apparently saw her twice, but she never mentioned about her thoughts and got a "clean bill of mental health".

AR 362-63.

22. During the same interview, Dr. Apud noted that family members reported that Ms. Banerjee was taken to the Wilmington VA hospital for evaluation in 1991. She was to be sent to Perryville, Maryland VA Medical center for hospitalization, but she ran away from home. Her parents arranged a marriage for Ms. Banerjee in 1992, but her husband proved to be abusive and she divorced her husband in 1994. Following the 1994 divorce, Ms. Banerjee "felt despondent, hopeless, helpless" and tried to kill herself. AR 363.

23. In 1997, Ms. Banerjee was hospitalized at the Wilmington VA Medical center because of a suicide attempt.

> At that time, she reported persistent paranoid and bizarre delusions. She felt that the radio and TV were sending messages to her, felt that people could hear her thoughts. She also described a number of voices that she had been hearing for some time. Once voice was the Lord Shiva, who was commanding her what to do, what to eat, where to go etc. At times, she would see his figure. She also heard the voice of a goddess Gayatre, also giving her different commands.

AR 364.

24. Doctor Apud also noted that Ms. Banejee reported hearing other voices that she described as part of her personality, talking to her, including an eight or nine year-old girl. Ms.

Banerjee also heard other voices, including a masculine voice. Ms. Banerjee was transferred to Roanoke Memorial Hospital, where she was put on haloperidol and quetiapine, which stabilized her condition. AR 364.

25. On discharge, Ms. Banerjee had the following psychiatric diagnoses:

> Axis I: Schizophrenia paranoid.
> Axis II.: Deferred
> Axis III: Hyperprolactinemia with amenorrhea, in remission. Hip bursitis in remiss[i]on. History of stress fractures.
> Axis IV: Chronic illness.
> Axis V: 50.

AR 359.

26. The ABCMR denied Ms. Banerjee's application for correction of military records on August 7, 2003. AR 5. After outlining Ms. Banerjee's claim, the ABCMR discussed the evidence in her military records. AR 2-4. The ABCMR noted that Ms. Banerjee was counseled for failing to maintain military standards, and that separation proceedings were initiated under Army Regulation 635-200, Chapter 13. AR 3. The ABCMR also noted that she was cleared for separation by a Mental Status Evaluation and a medical examination. Id. The ABCMR stated that Ms. Banerjee was discharged for unsatisfactory performance and received an honorable discharge. Id. The ABCMR then discussed Colonel Ravel's statement in support of Ms. Banerjee and the VA's act of granting her a service connected disability. AR 4. Finally, the ABCMR discussed the regulatory authority for separation of enlisted personnel and the legal distinction between VA and Army disability awards. Id.

27. The ABCMR outlined its reasons for denying Ms. Banerjee's application. AR 4-5. The ABCMR relied upon the Mental Status Evaluation which determined Ms. Banerjee was fully alert and oriented, had good memory, and clear thought process. AR 4. The ABCMR also noted

that Ms. Banerjee was separated in accordance with applicable regulations and that the evidence of record indicated that she did not have any medically unfitting disability that required physical disability processing. AR 5. Finally, the ABCMR noted that a rating action by the VA does not necessarily demonstrate any error or injustice by the Army, and that Ms. Banerjee had not justified the correction of her military records. Id.

28. Ms. Banerjee's complaint includes a VA decision granting her an entitlement to service connection for paranoid schizophrenia, evaluated as 100 percent disabling, effective August 15, 1991. Compl. Ex. B at 9. The VA based its service connection on a presumption, citing 38 C.F.R. § 3.400(b)(2)(ii) as authority, which states:

> Date entitlement arose, if claim is received within 1 year after separation from active duty; otherwise date of receipt of claim, or date entitlement arose, whichever is later. Where the requirements for service connection are met during service, the effective date will be the day following separation from service if there was continuous active service following the period of service on which the presumption is based and a claim is received within 1 year after separation from active duty.

Id. at 14. The VA further determined that:

> Since a claim for service connection was received within 1 year after separation from active duty, the effective date is the date entitlement arose. The date entitlement arose is the first date on which the condition was diagnosed. Based on granting benefit of doubt, service connection has been granted from August 15, 1991, the date of diagnosis of "incipient schizophrenic decompensation."

Id. The VA concluded "[i]t appears that the veteran has been suffering from an active disease process since August 1991. There have been periods of relative remission and exacerbation, depending partially on whether she took her medications and other life stressors." Id.

Respectfully submitted,

/s/ THOMAS J. REED
THOMAS J. REED
Veterans Law Clinic
Widener University School of Law
P.O. Box 7474
Wilmington, DE 19803-0474
Tele: (302) 477-2070
Fax: (302) 477-2706

Attorney for Plaintiff

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ BRYANT G. SNEE
BRYANT G. SNEE
Deputy Director

/s/ MEREDYTH D. COHEN
MEREDYTH D. COHEN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Tel: (202) 353-7978
Fax: (202) 514-8624
Washington, D.C. 20530

April 11, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2007 a copy of the foregoing "JOINT STATEMENT OF FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/MEREDYTH D. COHEN